IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KATHLEEN N. PEDRO
on behalf of herself and all others
similarly situated,

    Plaintiff,

      v.

                            CIVIL ACTION FILE
                            NO. 1:15-CV-3735-TWT

EQUIFAX, INC., et al.,

    Defendants.

## OPINION AND ORDER

This is a class action under the Fair Credit Reporting Act. It is before the Court on the Defendants Equifax, Inc. and TransUnion, LLC's Motion to Dismiss [Doc. 38]. For the reasons set forth below, the Defendants Equifax, Inc. and TransUnion, LLC's Motion to Dismiss [Doc. 38] is GRANTED.

## I. Background

In 1996, the Plaintiff Kathleen Pedro's parents applied for and obtained a Capital One credit card.[1] When the Plaintiff's parents became ill, they made her an

---

[1]    Compl. ¶ 16.

"authorized user" on their Capital One credit card.[2] The Plaintiff, however, never became an obligor on the account.[3] Then, in 2014, both of the Plaintiff's parents passed away, and the Capital One credit card account went into default.[4] On January 25, 2015, the Plaintiff discovered that her credit score had dropped from 822 to the low 700s on her credit report from the Defendant Equifax, Inc.[5] The Plaintiff learned that the reason for the drop was a negative credit "hit" arising from her parents' delinquent credit card account.[6] A credit report from the Defendant TransUnion, LLC also revealed a similar negative credit hit.[7] The Plaintiff contacted Capital One about the delinquent account, which resulted in Capital One terminating the Plaintiff's authorized user status.[8]

Despite the fact that the account status for the Capital One credit card was changed to "Account Relationship Terminated," the delinquent account continued to

---

[2]   Id. ¶ 17.

[3]   Id.

[4]   Id. ¶ 19.

[5]   Id. ¶ 20.

[6]   Id.

[7]   Id.

[8]   Id. ¶ 21.

hurt the Plaintiff's credit score.[9] Her credit score did not return to its previous level until Capital One removed its entire tradeline from her credit reports.[10] The Plaintiff alleges that the negative hit on her credit report "resulted in actual damages in the form of a reduction in her ability to obtain credit, an increase in the cost of obtaining such credit that she was able to secure, loss of economic opportunities, and loss of creditworthiness."[11]

The Plaintiff brought suit, individually and on behalf of all others similarly situated, against TransUnion and Equifax. She asserts that the Defendants willfully violated 15 U.S.C. § 1681e(b) of the Fair Credit Reporting Act ("FCRA").[12] Specifically, she alleges that "the procedures utilized by Defendants in gathering and scoring credit information relating to authorized users of credit card accounts results in systematic inaccuracies on those authorized user's credit reports and credit scores."[13] And, as a result of their unreasonable procedures, the Defendants improperly report the credit histories of authorized users of credit cards. According

---

[9]  Id. ¶ 22.

[10]  Id. ¶ 29.

[11]  Id. ¶ 30.

[12]  Id. ¶ 1.

[13]  Id. ¶ 38.

to the Plaintiff, the Defendants knew or should have known about their flawed procedures because they have received thousands of disputes from consumers about negative credit hits stemming from authorized user information. Moreover, she alleges that the Defendants are key members of the Consumer Data Industry Association, which formulates guidelines for "credit furnishers" like Capital One.[14] The guidelines purportedly direct credit furnishers to report the credit histories of authorized users of credit cards.[15] Thus, the Plaintiff alleges that the Defendants knew that the credit furnishers were reporting negative payment history for authorized user information. The Defendants now move to dismiss.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[16] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[17] In ruling on a motion to dismiss, the court must

---

[14]   Id. ¶ 24.

[15]   Id. ¶ 25.

[16]   Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6).

[17]   Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007).

accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff.[18] Generally, notice pleading is all that is required for a valid complaint.[19] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.[20]

### III. Discussion

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." While an agency that negligently violates § 1681e(b) is only liable for actual damages, an agency that willfully violates § 1681e(b) may be liable for actual, statutory, or punitive damages.[21] Here, the Plaintiff alleges that the Defendants willfully violated § 1681e(b) and only seeks statutory and punitive damages. To recover such damages through a purported willful violation of § 1681e(b), a plaintiff

---

[18]    See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[19]    See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[20]    See Erickson v. Pardus, 551 U.S. 89, 93 (2007).

[21]    See 15 U.S.C. §§ 1681o(a), 1681n(a).

must sufficiently allege that (1) the agency prepared an inaccurate report, and (2) the inaccuracy was a result of the agency's willful disregard of reasonable procedures to ensure maximum possible accuracy.[22]

In determining whether a credit report is inaccurate under § 1681e(b), courts have followed one of two approaches: (1) "technically accurate" or (2) materially misleading.[23] Under the first approach, "a credit reporting agency satisfies its duty under [§ 1681e(b)] if it produces a report that contains factually correct information about a consumer that might nonetheless be misleading or incomplete in some respect."[24] This approach was adopted by the Northern District of Alabama in Heupel v. Trans Union LLC.[25] There, the court concluded that requiring the consumer reporting agencies to ensure each report be void of material omissions would place too

---

[22]     Id. §§ 1681e(b), 1681n(a); see also Beaudry v. Telecheck Servs. Inc., 579 F.3d 702, 705-06 (6th Cir. 2009) (holding that, when alleging a willful violation of § 1681e(b), a plaintiff does not need to allege consequential damages); Farmer v. Phillips Agency, Inc., 285 F.R.D. 688, 699 n.17 (N.D. Ga. 2012) (noting that to sustain a claim under § 1681e(b) and § 1681n(a), the plaintiff "no longer needs to show that damages resulted from the disclosure of an inaccurate consumer report").

[23]     See, e.g., Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156-57 (11th Cir. 1991) (discussing the two approaches); Heupel v. Trans Union LLC, 193 F. Supp. 2d 1234, 1240-41 (N.D. Ala. 2002) (same).

[24]     Cahlin, 936 F.2d at 1157.

[25]     193 F. Supp. 2d 1234.

great a burden on the agencies.[26] Moreover, it would leave the agencies potentially liable for omitting information of which they did not know.[27]

For the second approach – materially misleading – a credit reporting agency may be liable "if the plaintiff establishes that the agency reported factually correct information that could also be interpreted as being misleading or incomplete."[28] Though the Eleventh Circuit has yet to adopt either approach,[29] several circuits have adopted the materially misleading approach.[30] For example, the District of Columbia Circuit followed this approach in Koropoulos v. Credit Bureau, Inc.[31] Relying on congressional intent, the court held that "Congress did not limit the Act's mandate to reasonable procedures to assure only technical accuracy; to the contrary, the Act requires reasonable procedures to assure 'maximum accuracy.'"[32] Moreover, the court

---

[26]    Id. at 1240.

[27]    Id.

[28]    Cahlin, 936 F.2d at 1157.

[29]    Id. at 1157-58.

[30]    See Taylor v. Screening Reports, Inc., No. 13 C 02886, 2015 WL 4052824,  at *3 (N.D. Ill. July 2, 2015) (collecting circuit court opinions).

[31]    734 F.2d 37 (D.C. Cir. 1984).

[32]    Id. at 40.

noted that the purpose of Act – to ensure "fair and equitable" credit reporting – would not be promoted by reports that are technically accurate but materially misleading.[33]

Here, the Defendants contend, *inter alia*, that the Plaintiff has failed to adequately allege a willful violation of § 1681e(b). To state a claim for willfulness, a plaintiff must demonstrate "that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act."[34] A consumer reporting agency recklessly violates the FCRA when its actions are "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."[35] "Thus, even if a consumer reporting agency engages in an erroneous reading of the statute, it is not reckless unless it was objectively unreasonable."[36] "A reading will be unreasonable when 'the business subject to the

---

[33]    Id.

[34]    See Levine v. World Fin. Network Nat'l Bank, 554 F.3d 1314, 1318 (11th Cir. 2009) (citing Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 70 (2007)).

[35]    Id. (quoting Safeco, 551 U.S. at 69).

[36]    Smith v. HireRight Sols., Inc., 711 F. Supp. 2d 426, 434 (E.D. Pa. 2010) (citing Safeco, 551 U.S. at 69)).

[FCRA] had the benefit of guidance from the courts of appeals or [a regulatory agency] . . . that might have warned it away from the view it took.'"[37]

The Plaintiff argues that the Defendants recklessly violated § 1681e(b). Specifically, the Complaint alleges that the Defendants were on notice that negative, inaccurate authorized user information appeared on their credit reports and was hurting consumers' credit scores.[38] And that this action amounts to a willful violation of § 1681e(b)'s mandate to "follow reasonable procedures to assure maximum possible accuracy of the information" in consumer reports.

In response, the Defendants contend that their reading of the FCRA mandate is not objectively unreasonable. They argue that because there are differing interpretations of "inaccuracy" under § 1681e(b), interpreting the section to allow technically accurate information on their consumer credit reports is not objectively unreasonable. Second, they contend that there is no authoritative guidance that states reporting truthful, negative authorized user information on a credit report is inaccurate. In support of this contention, they note that the Consumer Financial Protection Bureau "has expressly authorized creditors to send authorized user tradeline information to consumer reporting agencies for inclusion in authorized users'

---

[37]     Id. (quoting Safeco, 551 U.S. at 70).

[38]     Compl. ¶¶ 39-40.

credit reports.["39] They also cite to <u>Bailey v. Equifax Information Services, LLC</u>, in which the Eastern District of Michigan held that it was not technically inaccurate to list truthful, negative authorized user information on a credit report.[40]

The Court agrees with the Defendants. Given the lack of clarity regarding which standard of inaccuracy is appropriate, the Court cannot say that the Defendants' interpretation is objectively unreasonable.[41] Plainly – under the technically accurate approach – listing accurate authorized user information does not violate § 1681e(b). With regard to relevant court and agency authority, the Defendants point to both a district court decision and guidance from the Consumer Financial Protection Bureau that indicate listing authorized user information on credit reports is not a violation of the FCRA.[42]

The Plaintiff, on the other hand, does not cite to any guidance from relevant federal agencies that warns against listing authorized user information on credit

---

[39]   Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 6; <u>see also</u> 12 C.F.R. pt. 1002, supp. I, § 1002.10 (official interpretations).

[40]   No. 13-10377, 2013 WL 3305710, at *5 (E.D. Mich. July 1, 2013).

[41]   <u>See</u> <u>Safeco</u>, 551 U.S. at 70 n.20 (noting that a defendant cannot be liable for a knowing or reckless violation of the FCRA if the statutory text and relevant judicial and federal agency guidance allow for more than one reasonable interpretation of the Act).

[42]   <u>See</u> <u>Bailey</u>, 2013 WL 3305710, at *5; 12 C.F.R. pt. 1002, supp. I, § 1002.10.

reports. Moreover, the two judicial opinions the Plaintiff cites to in support of her argument are distinguishable from this case.[43] In <u>Fahey v. Experian Information Solutions, Inc.</u>, the Eastern District of Missouri held that the plaintiff had adequately alleged a willful violation of § 1681e(b).[44] But, there, the plaintiff had challenged the factual accuracy of his credit report.[45] Specifically, the plaintiff alleged that the consumer reporting agency had wrongly listed him as a joint obligor on two delinquent accounts, even though his wife was the sole obligor.[46] Here, the Plaintiff does not dispute that she was an authorized user on the delinquent account listed on her credit report.[47] Rather, she challenges the Defendants' choice to include the delinquent account on her credit report.[48] In <u>Price v. Trans Union, LLC</u>, the issue at hand was whether TransUnion violated § 1681e(b) by mixing the plaintiff's credit

---

[43]     <u>See Horsch v. Wells Fargo Home Mortg.</u>, 94 F. Supp. 3d 665, 678 (E.D. Pa. 2015) (holding that the plaintiffs failed to state a prima facie willfulness claim under the FCRA because they failed to cite to any relevant federal judicial decisions or federal regulators that put the defendant on notice that its conduct was a violation of the Act).

[44]     571 F. Supp. 2d 1082, 1093 (E.D. Mo. 2008).

[45]     <u>Id.</u> at 1084.

[46]     <u>Id.</u>

[47]     Compl. ¶¶ 17, 20.

[48]     <u>Id.</u> ¶ 40.

information with another consumer's credit information.[49] The court held that the plaintiff adequately alleged a willful violation because "at least three court of appeals had construed the meaning of § 1681e(b) against [TransUnion] in mixed file cases," and the FTC had specifically warned credit reporting agencies to review their procedures when a mixed file case occurs.[50] The Plaintiff, here, has failed to cite to any authority advising the Defendants against reporting accurate authorized user information.

In sum, the Plaintiff has not adequately alleged a willful violation of § 1681e(b). The Court cannot say that the Defendants' interpretation of § 1681e(b) is objectively unreasonable, and the authorities cited by the Defendants contradict the Plaintiff's claim that the Defendants willfully violated § 1681e(b) by including the Plaintiff's authorized user information on their credit reports. Consequently, the Plaintiff's FCRA claims are dismissed.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendants Equifax, Inc. and TransUnion, LLC's Motion to Dismiss [Doc. 38].

---

[49]     737 F. Supp. 2d 281, 283-84 (E.D. Pa. 2010).

[50]     Id. at 290.

SO ORDERED, this 12 day of May, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge